1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JOSEPH S. FARIS,

11           Plaintiff,                          No. CIV S-05-2053 DAD

12      v.

13   MICHAEL J. ASTRUE,[1]                       <u>ORDER</u>
     Commissioner of Social Security,
14
             Defendant.
15
     _____/
16

17           This social security action was submitted to the court, without oral argument, for

18   ruling on plaintiff's motion for summary judgment and/or remand and defendant's cross-motion

19   for summary judgment.  For the reasons explained below, the decision of the Commissioner of

20   Social Security ("Commissioner") is affirmed.

21                            **PROCEDURAL BACKGROUND**

22           Plaintiff Joseph Faris applied for Disability Insurance Benefits under Title II of

23   the Social Security Act (the "Act") on April 21, 2001.  (Transcript (Tr.) at 68-71.)  The

24   _____

25        [1]  On February 12, 2007, Michael J. Astrue was sworn in as Commissioner of Social
     Security, replacing Jo Anne B. Barnhart, the original defendant herein. Pursuant to 42 U.S.C. §
26   405(g) and Fed. R. Civ. P. 25(d)(1), Michael J. Astrue is substituted as the defendant in this
     action.

                                            1

Commissioner denied plaintiff's application initially and on reconsideration.  (Tr. at 53-62.)

Pursuant to plaintiff's request, a hearing was held before an administrative law judge ("ALJ") on

February 17, 2004.  (Tr. at 22.)  In a decision issued on September 24, 2004, the ALJ determined

that plaintiff was not disabled as defined in the Social Security Act.  (Tr. at 22-35.)  The ALJ

entered the following findings:

> 1.  The claimant meets the nondisability requirements for a period of disability and Disability Insurance benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.
>
> 2.  The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> 3.  The claimant's degenerative disc disease of the lumbar spine are considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(c).
>
> 4.  These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
>
> 5.  The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.
>
> 6.  The claimant has the following residual functional capacity:  sit, stand, or walk for six hours total in an eight-hour day, although he cannot continuously walk or stand; lift 20 pounds occasionally and 10 pounds frequently; she [*sic*] should only occasionally balance, crouch, crawl.
>
> 7.  The claimant is unable to perform any of his past relevant work (20 CFR § 404.1565).
>
> 8.  The claimant is a "younger individual between the ages of 45 and 49" (20 CFR § 404.1563).
>
> 9.  The claimant has "more than a high school (or high school equivalent) education" (20 CFR § 404.1564).

/////

10.   The claimant has transferrable skills from skilled work previously performed as described in the body of the decision (20 CFR § 404.1568).

11.   The claimant has the residual functional capacity to perform a significant range of light work (20 CFR § 416.1567).

12.   Although the claimant's exertional limitations do not allow him to perform the full range of light work, using Medical-Vocational Rule 202.21 as a framework for decision-making, there is a significant number of jobs in the national economy that he could perform.  Examples of such jobs include work as cashier II  (Dictionary of Occupational Titles 211.462-010, light exertion, unskilled), 3.1 million jobs in the economy of the United States, and 32,000 jobs in the economy of the state of Oregon; Timber Faller 9211.467-010, light, unskilled, SVP 2), 110,000 jobs in the U.S. and 3,000 in Oregon; Outside Deliverer (230.663-010, light, unskilled SVP 2), 100,000 jobs in the U.S. and 1,000 jobs in Oregon.

13.   The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(g)).

(Tr. at 34-35.)  The Appeals Council declined review of the ALJ's decision on August 15, 2005. (Tr. at 7-9.)  Plaintiff then sought judicial review, pursuant to 42 U.S.C. § 405(g), by filing the complaint in this action on June 16, 2005.

## LEGAL STANDARD

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence and the proper legal standards were applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).  The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive.  See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Morgan, 169 F.3d at 599;

3

Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See Jones, 760 F.2d at 995. The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal Regulations, Sections 404.1520 and 416.920. See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). This five-step process can be summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is conclusively presumed disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his or her past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

1  Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).  The claimant bears the burden of proof in

2  the first four steps of the sequential evaluation process.  Yuckert, 482 U.S. at 146 n.5.  The

3  Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.;

4  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

5                                                  **APPLICATION**

6            Plaintiff advances essentially four arguments in his motion for summary

7  judgment.  Plaintiff's first argument is two-fold, alleging that the ALJ erred in rejecting the

8  opinion of plaintiff's treating physician, and that such error led to an improper finding that

9  plaintiff was capable of performing a limited range of light work.  Second, plaintiff asserts that

10 the ALJ's credibility determination regarding plaintiff's pain and subjective symptoms was in

11 error.  Third, plaintiff argues that the ALJ improperly rejected the lay testimony of plaintiff's

12 wife.  Fourth, plaintiff asserts that the ALJ improperly relied on the vocational expert's response

13 to a hypothetical question that did not reflect all of plaintiff's limitations.  The court addresses

14 each of plaintiff's arguments below.

15       **A.  Treating Physician's Opinion and RFC Determination**

16           Plaintiff argues that the ALJ improperly considered the medical evidence, first by

17 rejecting the opinion of Dr. Edward B. Miller, M.D., plaintiff's treating physician, and then by

18 making "his own independent medical findings and speculative inferences from the medical

19 evidence." (Pl.'s Br. and Mot. for Summ. J. at 3:18-19.)  Defendant has interpreted the latter half

20 of this argument as a challenge to the ALJ's assessment of plaintiff's residual functional capacity

21 ("RFC").  Accordingly, the court addresses both the ALJ's treatment of the medical evidence and

22 his assessment of plaintiff's RFC.

23           First, it is well-established that the medical opinion of a treating physician is

24 entitled to special weight.  See Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989); Embrey v.

25 Bowen, 849 F.2d 418, 421 (9th Cir. 1988).  "As a general rule, more weight should be given to

26 the opinion of a treating source than to the opinion of doctors who do not treat the claimant."

1  Lester, 81 F.3d at 830 (citing Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987)).  "At least

2  where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only

3  for 'clear and convincing' reasons."  Id. (citing Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir.

4  1991)).  "Even if the treating doctor's opinion is contradicted by another doctor, the

5  Commissioner may not reject this opinion without providing 'specific and legitimate reasons'

6  supported by substantial evidence in the record for so doing."  Id. (citing Murray v. Heckler, 722

7  F.2d 499, 502 (9th Cir. 1983)).

8          Here, treating physician Dr. Edward B. Miller opined in numerous treatment notes

9  that plaintiff was virtually unemployable due to his structural lower back pain.  In a treatment

10  note dated March 18, 2002, the doctor wrote that plaintiff

11          is disabled for all but sedentary work and his reduced tolerance for
         sitting and need for frequent positional changes would make him
12          unemployable as a typical office worker or clerical position.  His
         earning capacity is substantially reduced by his spine condition and
13          he is only able to perform part time work in a niche position as a
         water master for an irrigation district, where he provides
14          supervision for others who perform his manual labor.

15  (Tr. at  252.)[2]

16          These notes are consistent with Dr. Miller's December 9, 2002, evaluation of

17  plaintiff's functional capacities.  (Tr. at 249-50.)  There, Dr. Miller opined that plaintiff lacked

18  the capacity to work a full eight-hour workday, that he could only perform sedentary work for

19  about two hours per day, could drive for a maximum of one hour per day, and could sit in class

20  for about two hours at a time but would have to change positions frequently, alternating between

21  sitting, standing, reclining and walking.  (Tr. at 249.)  Dr. Miller also opined that plaintiff would

22

23          [2]  According to plaintiff and his wife, plaintiff's job with the irrigation district as a
  ditch-tender was "made-up" for him by friends and family at the district, insofar as they allowed
24  him to perform only those parts of the job requiring little or no manual labor.  Plaintiff claimed
  his primary duty was to call farmers when it was their turn to use water, and to drive around
25  checking pumps.  Given the small amount of money made by plaintiff and the minimal numbers
  of hours allegedly worked, the ALJ gave "claimant the benefit of the doubt" and found that he
26  had not performed substantial gainful activity.  (Tr. at 24, 319-22, 346-54.)

1   need to use his arms to brace himself in a chair during sitting activities due to back pain and that

2   he would be unable to stand for any extended period without bending over or leaning on

3   furniture.  (Id.)  He further commented that plaintiff would have to lie down two to three times a

4   day for twenty to sixty minutes in order to relieve pain.  He opined that plaintiff was capable of

5   occasionally lifting between five and twenty pounds, but never more than that, and that plaintiff

6   could occasionally reach and bend, but never climb.  Dr. Miller stated that plaintiff's limitations

7   were due to structural lower back pain, which would affect plaintiff's stamina and subject him to

8   unpredictable absenteeism.  (Id.)

9          Again, on February 9, 2004, Dr. Edward Miller opined in a treatment note that

10   "there has been no significant change from Mr. Faris' exam of 12/9/02.  He would be

11   unemployable under most circumstances at even sedentary work."  (Tr. at 305.)

12          The ALJ rejected Dr. Miller's opinion as to plaintiff's functional abilities, finding

13   it to be inconsistent with the overall record, particularly in light of claimant's activities, which

14   included part-time work with an irrigation district, completion of college courses over several

15   semesters, and his service as an elected member on the local school board.  (Tr. at 31-32.)  The

16   ALJ further found Dr. Miller's assessment overly restrictive in light of his previous endorsement

17   of plaintiff's physical activities.  For example, the ALJ noted that on September 6, 2001, Dr.

18   Miller wrote a note to plaintiff's employer stating that plaintiff was able to perform "modified

19   duties" with "no lifting greater than twenty pounds or repetitive lifting, bending, stooping,

20   twisting or carrying."  (Tr. at 27, 256.)  Similarly, the ALJ observed that in a February 14, 2002,

21   treatment note, Dr. Miller instructed plaintiff to "walk regularly."  (Tr. at 30, 253.)

22          Moreover, Dr. Edward Miller's opinion as to plaintiff's abilities was contradicted

23   by Dr. Charles R. Miller, M.D., who examined plaintiff on July 25, 2001.  (Tr. at 165-71.)  Dr.

24   Charles Miller wrote that plaintiff had "degenerative disc disease with spinal stenosis and

25   bulging discs with no impingement or protrusions."  He found that plaintiff had intact motor

26   strength, sensation and reflexes.  (Tr. at 167-71.)  He reported that plaintiff walked with a normal

1  stance and gait and could perform "heel and toe walking." (Tr. at 167.) He opined that

2  plaintiff's standing and walking should be limited to only "six hours per day on a non-continuous

3  basis," that "lifting and carrying are limited to 50 pounds occasionally and 25 pounds

4  frequently," and that "[p]rolonged sitting is restricted to six hours per day." (Tr. at 172.)

5          "The ALJ is responsible for determining credibility, resolving conflicts in medical

6  testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir.

7  2001). Accordingly, the court must defer to the ALJ's decision to reject the opinion of a treating

8  physician in favor of the conflicting opinion of an examining physician if the ALJ sets forth

9  specific legitimate reasons based on substantial evidence in the record. Connett v. Barnhart, 340

10 F.3d 871, 874-75 (9th Cir. 2003); Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1040 (9th

11 Cir. 2003); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). Similarly, it is the duty of

12 the ALJ to determine a claimant's residual functional capacity from the medical record. 20

13 C.F.R. §§ 404.1546(c), 416.946(c); see also Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir.

14 2001).[3]

15          Here, the ALJ stated specific, legitimate reasons based on substantial evidence in

16 the record for rejecting Dr. Edward Miller's opinion and finding that plaintiff had the RFC to

17 perform a limited range of light work. In particular, the ALJ's decision in both respects is

18 supported by his citation to plaintiff's part-time work, Dr. Edward Miller's endorsement of that

19 work (in addition to his encouragement that plaintiff walk regularly), plaintiff's successful

20 completion of college courses over several semesters, and his service as a school board member,

21 including his regular attendance at those meetings.

22          Furthermore, the ALJ conducted a thorough review of the medical evidence of

23 record, and concluded that "clinical signs, including motion of the low back, are not remarkable."

24

---

25      [3] A claimant's residual functional capacity is what he can still do despite his limitations
    and is an assessment based upon all of the relevant evidence. 20 C.F.R. §§ 404.1545(a),
26  416.945(a); see also Mayes v. Massanari, 276 F.3d 453, 461 (9th Cir. 2001).

1    (Tr. at 31.)  Specifically, the ALJ noted that plaintiff's medical treatment had been moderate,

2    consisting of narcotic analgesics, with the only "surgical-like procedures" being nerve blocks.

3    (Id.)  The ALJ further remarked that plaintiff's reflexes have remained intact, that he has suffered

4    no muscle atrophy, and that his sensation is essentially intact with normal motor strength, apart

5    from mild loss in the lower right extremity.  (Tr. at 30, 165-171.)

6            The ALJ also reviewed Dr. Edward Miller's treatment notes, which, as discussed

7    above, show that he encouraged plaintiff to walk regularly and that he endorsed plaintiff's part-

8    time employment as a ditch tender, albeit with some limitations.  (Tr. at 253, 256.)  Those

9    treatment notes also reveal that plaintiff's condition was "somewhat improved by minimally

10   invasive treatment" and that he was consistently able to make bending and stretching movements

11   with minimal to no pain. (See, e.g., Tr. at 252, 253, 254, 256.)

12           Based on this and other evidence, the ALJ determined that plaintiff had the RFC

13   to perform a limited range of light work.  (Tr. at 32, 34.)  Specifically, he determined that

14   plaintiff could "sit, stand, or walk for six hours total in an eight-hour day, although he cannot

15   continuously walk or stand; lift 20 pounds occasionally and 10 pounds frequently; [and] could

16   only occasionally balance, crouch, crawl."  (Tr. at 34.)

17           This assessment is entirely consistent with and supported by substantial medical

18   evidence in the record.  In particular, it reflects almost exactly the limitations set forth in the

19   opinion of the examining physician, Dr. Charles R. Miller, (tr. at 172), as well as those set forth

20   in the RFC assessments completed by non-examining state agency physicians on August 3 and

21   October 31, 2001.  (Tr. at 175-76, 228-29).  The opinions of non-examining physicians, when

22   consistent with other independent evidence in the record (such as the clinical tests and findings

23   made by examining physician Dr. Charles Miller), may constitute substantial evidence.

24   Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (citing Magallanes, 881 F.2d at 752).

25           Here, the assessments of the examining physician (tr. at 172), the non-examining

26   state agency physicians (tr. at 175-76, 228-29), and the treatment notes of the treating physician

1  upon which the ALJ relied (tr. at 253, 256) constitute substantial evidence in support of the

2  ALJ's RFC determination.

3         The court concludes that the ALJ did not err in rejecting as overly restrictive Dr.

4  Edward Miller's opinion regarding plaintiff's functional limitations.  Accordingly, the ALJ's

5  RFC assessment was supported by substantial evidence in the record.

6  **B. Plaintiff's Credibility and Lay Testimony**

7         Turning next to plaintiff's credibility argument, it is well-established that the

8  determination of credibility is a function of the ALJ, acting on behalf of the Commissioner.  See

9  Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995).  An ALJ's assessment of credibility should, in

10  general, be given great weight.  Nyman v. Heckler, 779 F.2d 528, 530-31 (9th Cir. 1985).  Thus,

11  questions of credibility and resolution of conflicts in the testimony are functions solely of the

12  Commissioner.  Morgan, 169 F.3d at 599.  In evaluating a claimant's subjective testimony

13  regarding pain and the severity of his or her symptoms an ALJ may consider the presence or

14  absence of supporting objective medical evidence along with other factors.  See Bunnell v.

15  Sullivan, 947 F.2d 341, 346 (9th Cir. 1991); see also Smolen v. Chater, 80 F.3d 1273, 1285 (9th

16  Cir. 1996).  Ordinary techniques of credibility evaluation may be employed, and the adjudicator

17  may take into account prior inconsistent statements or a lack of candor by the witness.  See Fair,

18  885 F.2d at 604 n.5.

19         Nonetheless, an ALJ's rejection of a claimant's testimony must be supported by

20  specific findings.  Morgan, 169 F.3d at 599; Matthews v. Shalala, 10 F.3d 678, 679 (9th Cir.

21  1993) (citing Miller, 770 F.2d at 848).  Once a claimant has presented evidence of an underlying

22  impairment, the ALJ may not discredit the claimant's testimony as to the severity of his or her

23  symptoms merely because the testimony is unsupported by objective medical evidence.  Moisa v.

24  Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Reddick v. Chater, 157 F.3d 715, 722 (9th Cir.

25  1998); Light v. Chater, 119 F.3d 789, 792 (9th Cir. 1997).  Rather, "the ALJ can reject the

26  claimant's testimony about the severity of [his or] her symptoms only by offering specific, clear

1   and convincing reasons for doing so." Light, 119 F.3d at 792. See also Reddick, 157 F.3d at

2   722.

3           Here, plaintiff's medical records document conditions which might reasonably be

4   expected to cause the symptoms allegedly suffered by plaintiff. However, while plaintiff alleges

5   that he is virtually incapacitated due to the severity of his lower back pain[4], the ALJ made

6   specific and detailed findings in not fully crediting that testimony. In this regard, the ALJ

7   evaluated plaintiff's subjective complaints regarding his physical condition at considerable

8   length. (Tr. at 28-30.) He cited numerous specific reasons for not fully crediting plaintiff's

9   testimony including, but not limited to: plaintiff's current and past activities inside and outside

10  the home, such as feeding chickens, picking up after himself, attending church every few months,

11  and driving his wife to work about three times a week; educational pursuits such as completing

12  college courses over several semesters, and achieving A grades in some classes; community

13  activities such as serving as a member of the local school board for the last 10 years, and

14  attending between 9 and 10 of the last 12 meetings, which last for up to 90 minutes; and, working

15  (though in a limited capacity) as a ditch tender for an irrigation district until at least September

16  2003, long after he alleged he became disabled. (See, e.g., Tr. at 29, 119-22, 316-45.) The ALJ

17  also relied upon opinions from non-examining (tr. at 175-76, 228-29) and examining physicians

18  (tr. at 166-72) and treating source notes (tr. at 252, 253, 256), that do not support the extreme

19  extent of the physical limitations alleged by plaintiff.[5] In his discussion of plaintiff's subjective

20  _____

21      [4]   For example, plaintiff claimed that he is only able to stand fifteen to twenty minutes at
a time, and sit for thirty to sixty minutes at a time. (See Tr. at 101.)

22      [5]   The ALJ noted that plaintiff's mobility was not as severely limited as plaintiff
represented. For example, a January 31, 2002, note made by treating physician, Dr. Edward
23  Miller, indicated that plaintiff "move[d] about the room with less inhibition than at his last visit.
Extension is tolerated reasonably well. . . . A left lateral bend elicits minimal discomfort." (Tr.
24  at 254.) Similarly, on February 14, 2002, Dr. Miller noted that "lateral bends to either side are
tolerable" and advised plaintiff to "walk regularly for exercise and spine mobility." (Tr. at 253.)
25  In a March 18, 2002, note Dr. Miller wrote that "anterior bend with fingertips to mid shin is
painless. Return to neutral is painful, but he avoids using a Gower's maneuver. Extension
26  causes minimal base of spine pain . . . He is somewhat improved by minimally invasive

1   complaints, the ALJ fairly characterized the record and sufficiently stated specific, clear and

2   convincing reasons for not fully crediting plaintiff's testimony regarding the severity of his

3   symptoms.  See Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998).  Therefore, plaintiff's

4   argument to the contrary must be rejected.

5           Plaintiff also argues that the ALJ erred in the treatment of the testimony of

6   plaintiff's wife. (Tr. at 346-54.)  His wife's testimony essentially supported plaintiff's own

7   testimony regarding the extent of his limitations.  However, in accurately assessing the medical

8   evidence as a whole and detailing his reasons for not fully crediting plaintiff's testimony, the ALJ

9   sufficiently provided specific reasons for disregarding this lay testimony as well.

10          "An ALJ need only give germane reasons for discrediting the testimony of lay

11  witnesses.  Inconsistency with medical evidence is one such reason."  Bayliss v. Barnhart, 427

12  F.3d 1211, 1218 (9th Cir. 2005) (citing Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) ("In

13  all, the ALJ at least noted arguably germane reasons for dismissing the family members'

14  testimony, even if he did not clearly link his determination to those reasons.").  Here, the ALJ

15  found that the credibility of plaintiff's wife was "intertwined with [plaintiff's] own issues of

16  credibility" and for that reason found her allegations regarding plaintiff's limitations to be less

17  than credible.  (Tr. at 32.)

18          For example, at the hearing plaintiff's wife testified that plaintiff could "maybe"

19  carry a gallon of milk, but "just from the car into the house."  (Tr. at 348.)  That testimony is

20  inconsistent with the record, which shows plaintiff is capable of lifting and carrying much more

21  than that.  (See, e.g., Tr. at 256, 172, 175-76, 228-29.)  Even Dr. Edward Miller, who gave the

22  _____

23  treatment."  (Tr. at 252.)  Furthermore, Dr. Miller wrote a note to plaintiff's employer on
    September 6, 2001, endorsing plaintiff's performance of "modified duties" with "no lifting

24  greater than twenty pounds or repetitive lifting, bending, stooping, twisting or carrying."  (Tr. at
    27, 256.)  This evidence shows that plaintiff was capable of far more activity than he represented.

25  (See, e.g., Tr. at 331-41)(testifying that he can do very little during a typical day other than drive
    his wife to work, and rotate between reclining, sleeping, watching television, and walking around

26  the house.)

1  most restrictive assessment of plaintiff's functional abilities, opined that plaintiff should be

2  limited to lifting items "no greater than 20 pounds." (Tr. at 256.)  Such inconsistency with the

3  record supports the ALJ's decision to discredit the testimony of plaintiff's wife.

4        C. **Hypothetical Posed to Vocational Expert**

5        Finally, plaintiff argues that the ALJ "erred by failing to adopt the medical

6  opinion of the VE in response to a hypothetical that accurately reflected plaintiff's actual

7  limitations." (Pl.'s Br. and Mot. for Summ. J. at 11:11-15)  In essence, plaintiff is again

8  challenging the ALJ's decision not to wholly adopt Dr. Edward Miller's opinion with respect to

9  plaintiff's limitations.  As discussed above, the ALJ's decision was not erroneous in that regard.

10        While an ALJ may pose to a vocational expert a range of hypothetical questions,

11  based on alternate interpretations of the evidence, the hypothetical which ultimately serves as the

12  basis for the ALJ's determination must be supported by substantial evidence in the record as a

13  whole.  Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  Here, the hypothetical question

14  posed to expert and relied on by the ALJ included all of the limitations the ALJ found plaintiff to

15  suffer.  Consistent with the analysis above, the ALJ's findings as to plaintiff's limitations were

16  supported by substantial evidence in the record as a whole.  Accordingly, the ALJ did not err by

17  relying on the vocational expert's response to a hypothetical question that did *not* incorporate Dr.

18  Edward Miller's opinion of plaintiff's limitations.

19  /////

20  /////

21  /////

22  /////

23  /////

24  /////

25  /////

26  /////

**CONCLUSION**

Accordingly, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for summary judgment and/or remand is denied;

2.  Defendant's cross-motion for summary judgment is granted; and

3.  The decision of the Commissioner of Social Security is affirmed.

DATED: June 13, 2007.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:mb
faris2053.ord

14